**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

FROLLY MAURICE BALL,

    Defendant.

No. 13-CR-2013-LRR

**ORDER**

_____

**TABLE OF CONTENTS**

*I.   INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*
*II.  PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*
*III. RELEVANT FACTUAL BACKGROUND.* . . . . . . . . . . . . . . . . . . . . . . *2*
    *A.   Inventory Search.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *B.   DEA Task Force Investigation.* . . . . . . . . . . . . . . . . . . . . *3*
*IV.  ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.   Search of the Engine Compartment.* . . . . . . . . . . . . . . . . . *4*
        *1.   Inventory exception* . . . . . . . . . . . . . . . . . . . . . . . *4*
        *2.   Automobile exception.* . . . . . . . . . . . . . . . . . . . . . *6*
        *3.   Inevitable discovery.* . . . . . . . . . . . . . . . . . . . . . . *7*
    *B.   Defendant's Statements.* . . . . . . . . . . . . . . . . . . . . . . . . *8*
*V.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

## *I. INTRODUCTION*

The matter before the court is Defendant Frolly Maurice Ball's "Motion to Suppress" ("Motion") (docket no. 55).

## *II. PROCEDURAL HISTORY*

On June 26, 2013, a grand jury returned an Indictment (docket no. 4) charging Defendant with conspiracy to distribute and to possess with intent to distribute at least one kilogram or more of a mixture or substance containing a detectable amount of heroin, at

least 500 grams or more of a mixture or substance containing a detectable amount of cocaine and some quantity of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C) and 846. On November 13, 2013, Defendant appeared in court before Chief Magistrate Judge Jon S. Scoles and entered a plea of not guilty. November 13, 2013 Minute Entry (docket no. 22). On April 21, 2014, Defendant filed the Motion. On May 1, 2014, the government filed a Resistance (docket no. 67). On June 2, 2014, the court held a hearing at which it heard argument on the Motion. *See* June 2, 2014 Minute Entry (docket no. 122). Special Assistant United States Attorney Lisa C. Williams represented the government. Defendant appeared in person and was represented by his attorney, Murray Bell. The matter is fully submitted and ready for decision.

### III. RELEVANT FACTUAL BACKGROUND[1]

#### A. Inventory Search

On November 12, 2010, Illinois State Police Officer Chad Martinez was monitoring westbound traffic on Interstate 80 near Morris, Illinois. Officer Martinez pulled behind a silver 2007 Dodge Charger and, after checking the vehicle's registration, learned that it was registered to a female from Iowa. After the vehicle exited at exit 47, the Morris exit, Officer Martinez initiated a traffic stop.[2] Darrick Johnson was driving the vehicle and Defendant was seated in the passenger seat. Officer Martinez discovered that Johnson had a suspended driver's license from Mississippi and that Defendant did not have a valid driver's license. Because neither Johnson nor Defendant had a valid driver's license necessary to operate the vehicle, Officer Martinez informed Defendant that he was going to impound the vehicle, consistent with written Illinois State Patrol policy. Officer

---

[1] When relevant, the court relies on and discusses additional facts in conjunction with its analysis of the law.

[2] Defendant does not argue that the stop of the vehicle was improper.

2

Martinez opened the hood to inspect the engine compartment and noticed fresh fingerprints on the top and the side of the air filter box. Officer Martinez opened the top portion of the air filter box and discovered two large packages of what he suspected was cocaine.

Officer Martinez placed Defendant under arrest and gave him *Miranda* warnings. Defendant indicated that he wished to speak further about the narcotics found in the vehicle and wanted to further the investigation in Iowa. Officer Martinez transported Defendant to the Morris, Illinois police department where Special Agent Jorge Fonseca and Sergeant Rivera interviewed Defendant. Defendant made incriminating statements during the interview about his involvement in narcotics trafficking.

### B. *DEA Task Force Investigation*

In May of 2010, DEA Task Force Officer Bryan Furman began investigating a heroin conspiracy that centered in Waterloo, Iowa and spanned Eastern Iowa. As a part of this investigation, the Task Force identified Defendant as the source of supply of the heroin in the Waterloo area. The Task Force obtained a Title III wiretap for Defendant's phone, which provided agents information about the calls made and received from the phone, realtime access to the content of phone calls made from the phone and information that allowed the Task Force to track the location of the phone.

During the period immediately preceding the November 12, 2010 traffic stop at issue, Officer Furman learned that Defendant was using Joshua Davis as a supplier of drugs. Officer Furman learned that Defendant intended to purchase between one half and one kilogram of narcotics from Davis in Chicago, Illinois. On November 11, 2010, Officer Furman learned that Defendant successfully obtained narcotics in Chicago, and he was monitoring Defendant's location and phone calls by use of the wiretap as Defendant traveled away from the Chicago area. Officer Furman recalled one conversation between Defendant and Davis in which Defendant and Davis confirmed that they had met. At 5:11 p.m. on November 12, 2010, Furman intercepted a call between Defendant and Trinette

Boldon in which Defendant stated that he was "going through a little trouble with the cops" and that he had "to get the car situated" because it was "getting towed." Government Exhibit 4 (docket no. 123-3) at 1. Upon hearing this call, Officer Furman called the Morris Police Department and learned that Defendant was detained and talking to officers at the police department. Officer Furman testified that had the Illinois State Police not discovered narcotics in the vehicle, based on the overwhelming amount of evidence that he had that narcotics were in the vehicle, Officer Furman would have taken steps to retrieve the narcotics from the vehicle.

## IV. ANALYSIS

In the Motion, Defendant argues that "[t]he search of the stopped vehicle, in particular the search of the engine compartment and the closed air filter box, exceeded the allowable scope for inventory searches" and that his "statement[s] to [l]aw [e]nforcement officers [were] the direct result of the illegal search . . . and [are] therefore 'fruits of the poisonous' tree," and should be suppressed. Motion at 2.

### A. *Search of the Engine Compartment*

"'The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)) (internal quotation marks omitted).

#### 1. *Inventory exception*

One recognized exception to the general rule above "allows law enforcement to inventory the contents of a lawfully impounded vehicle without a warrant or probable cause." *Id*. This exception is justified because it provides for "the protection of the owner's property while it remains in police custody; the protection of the police against

claims or disputes over lost or stolen property; and the protection of the police from potential danger." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (citations omitted). However, "an inventory search must not be a ruse for a general rummaging . . . to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). A search conducted pursuant to the inventory exception complies with the Fourth Amendment even in the absence of a warrant or probable cause "so long as [it is] reasonable under the totality of the circumstances." *United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013). "'The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally remove the inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime.'" *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013) (quoting *Taylor*, 636 F.3d at 464). Moreover, "[e]ven if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search." *Taylor*, 636 F.3d at 465. That is, if the government does not conduct an inventory search according to standardized procedures, for the search to run afoul of the inventory exception there must still be something more "to suggest that the police were engaging in their criminal investigatory function, not their caretaking function, in searching [a] defendant's vehicle." *Id*. The government has the burden to show "that its conduct complied with the inventory search exception." *Id*. at 464.

Here, the Illinois State Police Tow Services Policy Manual requires the Illinois Police Department to complete a tow report when an officer inventories the contents of a vehicle. The Policy Manual states that the inventory "will be restricted to those areas where an owner or operater would ordinarily place or store property or equipment in the vehicle[], and would normally include . . . [t]runk and engine compartments." Illinois State Police Tow Services Policy Manual (docket no. 67-1) at 2. Officer Martinez testified that he has performed more than a thousand such inventory searches and that he searches

5

the engine compartment of the vehicle every time and the air filter box at least ninety percent of the time.

The court finds that the inventory search performed by Officer Martinez was reasonable because it was "conducted according to standardized police procedures." *Smith*, 715 F.3d at 1117 (quoting *Taylor*, 636 F.3d at 464); *see also United States v. Pappas*, 452 F.3d 767, 772 (8th Cir. 2006) (holding that the search of an engine compartment falls within the inventory exception); *United States v. Lewis*, 3 F.3d 252, 254 (8th Cir. 1993) (same). The record clearly indicates that Officer Martinez complied with the Illinois Police Department policy. *Cf Taylor*, 636 F.3d at 465-66 (holding that failing to comply with the police department's inventory policy combined with pretext rendered the inventory search unconstitutional). The government presented ample evidence at the June 2, 2014 hearing through Officer Martinez's testimony that the air filter box in the engine compartment often contains narcotics and currency, and that the policy of the Illinois State Police Department was to search the engine compartment. By searching the air filter box, the police are protected "against claims or disputes over lost or stolen property . . . and . . . potential danger." *Opperman*, 428 U.S. at 369. Moreover, neither party presented any evidence that the inventory search was "a ruse for a general rummaging . . . to discover incriminating evidence." *Wells*, 495 U.S. at 4. Because the search of the vehicle was a valid inventory search, the court shall deny the Motion.

### 2. *Automobile exception*

Another exception to the general rule that warrantless searches are per se unreasonable is the automobile exception. "[T]he 'automobile exception' permits the warrantless search of a vehicle if the police 'had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began.'" *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)). "Probable cause exists when 'there is a fair probability

that contraband or evidence of a crime will be found in a particular place.'" *United States v. Palega*, 556 F.3d 709, 714 (8th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "A totality of the circumstances test is used to determine whether probable cause exists." *United States v. Gleich*, 397 F.3d 608, 612 (8th Cir. 2005).

While the court has already decided that the search of the air filter box did not violate the Fourth Amendment because it was a valid inventory search, the court alternatively concludes that the search was reasonable pursuant to the automobile exception. Officer Martinez testified that: (1) the corridor he was patrolling is often used to transport drugs out of Chicago; (2) the 2007 Dodge Charger contained numerous air fresheners, cell phones and fast food wrappers, which he testified, based on his training and experience, is consistent with drug trafficking; (3) Defendant and Johnson gave conflicting stories as to how long they were in Chicago; (4) Johnson appeared overly nervous and was repeating questions asked of him; and (5) Officer Martinez discovered fresh fingerprints on the air filter box, a place where he has found narcotics and currency in past cases. The totality of these circumstances provided Officer Martinez with probable cause to believe that contraband would be found in the air filter box. Accordingly, the court shall deny the Motion to the extent it seeks to suppress evidence obtained through an illegal search of the air filter box.

### 3. *Inevitable discovery*

Even when the government illegally obtains evidence, such evidence may still be admissible pursuant to the inevitable discovery doctrine. "If the government 'can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . [then] the evidence should be received.'" *United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013) (alteration in original) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). Under prevailing Eighth Circuit law, to establish that the evidence would inevitably have been discovered "the government must

show (1) a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) an active pursuit of a substantial, alternative line of investigation at the time of the constitutional violation." *Id.* *But see United States v. Thomas*, 524 F.3d 855, 860-63 (8th Cir. 2008) (Colloton, J., concurring) (arguing that the Eighth Circuit's approach incorrectly interprets Supreme Court precedent and is both overinclusive and underinclusive).

While the court has already concluded that the search of the air filter box was reasonable under both the inventory exception and the automobile exception, the court also finds that even if the search was illegal, evidence obtained from the search is still admissible pursuant to the inevitable discovery doctrine. The government presented evidence through the testimony of Officer Furman that the DEA Task Force had been investigating Defendant since May 2010 and was aware—in realtime—of Defendant's whereabouts and that he was likely transporting drugs from Chicago back to Iowa. Moreover, Officer Furman testified that had Illinois Police not searched inside the air filter box and discovered narcotics, based on the wiretap and the Task Force's investigation into the conspiracy, the Task Force would have sought to take possession of the narcotics from the vehicle once it discovered that the vehicle had been impounded. Accordingly, the government has shown "a reasonable probability that the [drugs] would have been discovered" through the Task Force's investigation and that it was actively pursuing this investigation at the time of the search. *Allen*, 713 F.3d at 387. Therefore, even if the search was illegal, because the government would have inevitably discovered the drugs, the court shall deny the Motion.

### B. Defendant's Statements

Defendant argues that officers' subsequent questioning of Defendant "was contaminated by the prior illegal search of the closed air filter box." Brief in Support of the Motion (docket no. 55-1) at 5. Because the search of the air filter box was not illegal,

8

Defendant's statements were not fruit of the poisonous tree. However, even if the search of the air filter box was illegal, the court finds that the search was sufficiently attenuated from Defendant's statements such that suppression of the statements is not appropriate.

"'[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree.'" *United States v. Hastings*, 685 F.3d 724, 728 (8th Cir. 2012) (alteration in original) (quoting *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011)). "[T]he indirect fruits of an illegal search or arrest should be suppressed when they bear a sufficiently close relationship to the underlying illegality." *New York v. Harris*, 495 U.S. 14, 19 (1990). When admissions are "induced by [the defendant] being confronted with . . . illegally seized evidence," the admission or confession must be suppressed. *Fahy v. Connecticut*, 375 U.S. 85, 91 (1963); *see also United States v. Timmann*, 741 F.3d 1170, 1182 (11th Cir. 2013) ("Under the so-called 'fruit of the poisonous tree' doctrine, admissions or confessions that the police induce by confronting a suspect with evidence obtained through an illegal search or seizure must be suppressed.").

However, evidence should not be suppressed when "the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." *United States v. Crews*, 445 U.S. 463, 471 (1980). "Evidence showing statements after an illegal search were voluntary is a means of demonstrating the evidence is attenuated from the taint." *Riesselman*, 646 F.3d at 1080. In deciding whether statements are voluntary and purge the taint, courts "consider the giving of *Miranda* warnings, the 'temporal proximity' of the illegal search and the statements made, the 'presence of intervening circumstances,' and 'the purpose and flagrancy of the official misconduct.'" *Id.* (quoting *United States v. Lakoskey*, 462 F.3d 965, 675 (8th Cir. 2006)). "The purpose and flagrancy of the official

9

misconduct is considered the most important factor because it is directly tied to the purpose of the exclusionary rule—deterring police misconduct." *United States v. Simpson*, 439 F.3d 490, 496 (8th Cir. 2006).

> Courts have found purposeful and flagrant conduct where: (1) the impropriety of the official's misconduct was obvious or the official knew, at the time, that his conduct was likely unconstitutional but engaged in it nevertheless; and (2) the misconduct was investigatory in design and purpose and executed "in the hope that something might turn up."

*Id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 605 (1975)).

Here, Officer Martinez gave Defendant *Miranda* warnings while he had Defendant pulled over and before he transported Defendant back to the police station, which suggests that Defendant's statements were voluntary.[3] As to the temporal proximity of the statements, Officer Martinez searched the engine compartment at some time shortly after 3:18 p.m. and gave Defendant *Miranda* warnings at 3:36 p.m. Defendant made incriminating statements sometime after 5:00 p.m. This lapse of approximately ninety minutes is not so close in time as to render Defendant's statements involuntary. *See United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1112 (8th Cir. 2007) ("While 10 minutes does not in itself suggest sufficient attenuation to purge the taint of the stop, neither does it compel the conclusion that the attenuation was insufficient. Indeed, this court has found consent given a short time after the stop sufficient to purge the taint if other circumstances indicate the consent was sufficiently an act of free will."); *United States v. Becker*, 333 F.3d 858, 862-63 (8th Cir. 2003) (holding that a forty-nine minute lapse of time was not so short as to render the defendant's statements involuntary). As to the presence of intervening circumstances, the fact that Defendant was interviewed at a different location than the search and was interviewed by different officers than the one who searched is

---

[3] It is unclear whether the officers at the police station who interviewed Defendant provided additional *Miranda* warnings prior to the interview.

considered an intervening circumstance which lessens the taint. *See United States v. Vega-Rico*, 417 F.3d 976, 980 (8th Cir. 2005) (stating that statements made to different agents at a different location weigh in favor of attenuation); *United States v. Hernandez-Hernandez*, 384 F.3d 562, 565 (8th Cir. 2004) (same). Finally, as to the purpose and flagrancy of the misconduct, Officer Martinez followed the procedures put forth by the Illinois State Police Department to the letter. The court heard no evidence that Officer Martinez acted in bad faith or used the inventory search as a way to intentionally violate Defendant's constitutional rights. Accordingly, even if the search of the air filter box was illegal, the taint of the illegality is sufficiently attenuated to the extent that Defendant's later, *Mirandized* statements were voluntary. The court shall deny the Motion to the extent it seeks to suppress Defendant's statements.

## V. CONCLUSION

In light of the foregoing, Defendant Frolly Maurice Ball's "Motion to Suppress" (docket no. 55) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 24th day of June, 2014.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA